UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL
ADVOCATES, a non-profit organization,

                      Plaintiff,

    v.

UNITED STATES FISH AND
WILDLIFE SERVICE, a United States
Government Agency; UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY, a United States Government
Agency,

                      Defendants.

Case No. 3:18-CV-01420-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Northwest Environmental Advocates ("NEA"), brings this action against the U.S.

Fish and Wildlife Service ("FWS") and the U.S. Environmental Protection Agency ("EPA")

(collectively, "Defendants") under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et*

*seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 *et seq.*, challenging a biological opinion ("BiOp") issued by FWS in 2012, and the EPA's subsequent approval of Oregon's revised water quality criteria for toxic pollutants. NEA contends the EPA's approval of water quality criteria for arsenic, selenium, and zinc was based on the 2012 BiOp, which incorrectly concluded the proposed criteria would not cause jeopardy to the Bull Trout, a threatened species, or result in the adverse modification of its critical habitat. (Compl. for Declaratory and Injunctive Relief, ECF No. 1 ("Compl."), ¶¶ 3, 4.) Currently before the court is NEA's Motion to Complete and Supplement FWS's Administrative Record ("Motion"). (Mot. to Complete and Suppl. the U.S. Fish and Wildlife Service's Administrative R., ECF No. 20 ("Mot.").) For the reasons that follow, NEA's Motion is DENIED.

*Background*

I.     The ESA

The ESA was enacted as a means to conserve and protect endangered and threatened species and their habitats. 16 U.S.C. § 1531 (b), (c). In pursuit of this purpose, the ESA includes both substantive and procedural provisions, such as those set forth under Section 7, which "prescribes the steps that federal agencies must take to ensure that their actions do not jeopardize endangered wildlife and flora." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 652 (2007). Specifically, Section 7(a)(2) requires federal agencies to affirmatively "insure that any action authorized, funded or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction of adverse modification of habitat of such species which is determined . . . to be critical[.]" 16 U.S.C. § 1536(a)(2). If an agency concludes its anticipated action may adversely affect a protected species or its habitat, it must formally consult with FWS, as delegate for the Secretary of the Interior. *Id.*

Following consultation, FWS must provide the consulting agency with a BiOp explaining how the proposed action will impact protected species or habitat, and providing "reasonable and prudent alternatives" that will allow the project to proceed without placing protected species or critical habitat in jeopardy. 16 U.S.C. § 1536(b)(3)(A).

In formulating a BiOp, FWS must use "the best scientific and commercial data available." 16 U.S.C. § 1536 (a)(2); 50 C.F.C. 402.14(g)(8). Failure to do so violates the APA. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 995 (9th Cir. 2014). This is not to say that FWS must "conduct new tests or make decisions on data that does not yet exist." *Id.* (citing *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 998–99 (D.C. Cir. 2008)). Rather, the "best available science" standard is met "so long as [FWS] does not ignore available studies, even if it disagrees with or discredits them." *Id.* Indeed, reliance on weak data, if such data is the only data available, "does not render the agency's determination 'arbitrary and capricious.'" *Id.* What may constitute the best scientific data available, however, is "a scientific determination deserving of deference," and the Ninth Circuit has cautioned that "[a] court should be especially wary of overturning such a determination on review." *Id.* (first citing *Miccosukee Tribe of Indians of Fla. V. United States*, 566 F.3d 1257, 1265 (11th Cir. 2009); then citing *In re Consol. Salmonid Cases*, 791 F. Supp. 2d 802, 821 (E.D. Cal. 2011)).

## II.  The Instant Case

This action stems from the EPA's approval of numeric water quality criteria for various toxic pollutants applicable to all surface waters in the State of Oregon. Before approving the criteria, the EPA consulted with FWS to ensure the proposed standards would not jeopardize any protected species or result in the destruction or adverse modification of any designated critical habitats. On July 30, 2012, FWS issued a BiOp for EPA's proposed approval of Oregon's water

quality criteria. (Compl. ¶ 3.) As relevant here, the BiOp concluded that the proposed criteria for zinc, arsenic, and selenium would not jeopardize the Bull Trout, a threatened species, or destroy or adversely modify its critical habitat. (*Id.* ¶¶ 52–57.) On January 21, 2013, and April 11, 2014, respectively, EPA approved revised water quality criteria for the State of Oregon. (*Id.* ¶¶ 60–61.)

On June 25, 2015, FWS issued a BiOp for revisions to the State of Idaho's water quality criteria, which included criteria for arsenic, selenium, and zinc. (*Id.*) "Idaho's proposed criteria for chronic arsenic, chronic selenium, and acute and chronic zinc were identical to or stricter than those considered by FWS in the Oregon BiOp," and the Bull Trout was among the species considered. (*Id.* ¶ 63.) Contrary to the position set forth in the Oregon BiOp, however, "FWS found in the Idaho BiOp that those same or stricter proposed criteria were likely to jeopardize the continued existence of numerous threatened or endangered species, including the Bull Trout." (*Id.*)

On July 27, 2018, NEA filed this lawsuit, alleging FWS violated the APA by failing to use the best available science in reaching its "no jeopardy" findings in the Oregon BiOp with respect to zinc, selenium, and arsenic. (*Id.* ¶¶ 70–73.) NEA also brings three claims against the EPA under Section 7 of the ESA for failing to ensure its approval of the water quality criteria would not jeopardize the continued existence of Bull Trout, for failing to reinitiate consultation with FWS concerning the arsenic and zinc criteria, and for failing to consult with FWS regarding its April 11, 2014 approval of revised selenium criteria. (*Id.* ¶¶ 74–90.)

On February 20, 2019, FWS and EPA lodged administrative records with this court. (ECF No. 14.) On May 31, 2019, NEA filed the instant Motion, seeking to complete or supplement the record with an additional twenty-one studies which it claims were erroneously excluded from the record.

*Legal Standard*

A reviewing court generally must uphold agency action under the APA unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action should be overturned only when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). A reviewing court, therefore, must ask "whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Nat. Res. Defense Council v. U.S. Dep't of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997).

Review of agency action under the APA is generally restricted to the administrative record that was before the agency at the time of decision. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). This rule is intended to ensure a reviewing court affords adequate deference to the agency's expertise, experience, and processes. *Locke*, 776 F.3d at 992. In other words, the court must defer to an agency's considerable discretion "to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989). The danger of considering evidence outside of the administrative record is that "it inevitably leads the reviewing court to substitute its judgment for that of the agency." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). In substituting its own judgment, a court invariably abandons its obligation to "limit itself to the deferential procedural review that the APA's arbitrary and

capricious standard permits" and instead conducts its review *de novo*. *Locke*, 776 F.3d at 992

(citing *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1070 (9th Cir. 2010)).

Though agency decisions are entitled to a healthy measure of deference, a reviewing court must nevertheless engage in a "substantial inquiry" — a "thorough, probing, in-depth review" of the challenged action. *Id.* Judicial review of agency action therefore must be based on "the *whole* [administrative] record or those parts . . . cited by a party." 5 U.S.C. § 706 (emphasis added). The "whole record" consists of "'all documents and material directly or indirectly considered by agency decision-makers,'" including material "contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (quoting *Exxon Corp. v. Dep't of Energy*, 91 F.R.D. 26, 33 (N.D. Tex.1986)) (emphasis omitted). This does not mean "'every scrap of paper that could or might have been created'" on a particular subject must be included in the administrative record. *Golden Gate Salmon Ass'n v. Ross*, Case No. 1:17-cv-01172 LJO-EPG, 2018 WL 3129849, at *4 (E.D. Cal. June 22, 2018) (quoting *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002)). Rather, "a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal citations and quotations omitted).

The Ninth Circuit has recognized, however, that it sometimes may be "unrealistic and unwise to 'straightjacket' the reviewing court with the administrative record." *Asarco*, 616 F.2d at 1160. Accordingly, the Ninth Circuit has identified four limited circumstances under which a reviewing court may consider extra-record evidence:

> (1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision;
>
> (2) if the agency has relied on documents not in the record;
>
> (3) when supplementing the record is necessary to explain technical terms or complex subject matter; or

(4) when plaintiffs make a showing of bad faith

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (internal citations and quotations omitted). "These limited exceptions operate to identify and plug holes in the administrative record," and therefore must be narrowly construed and applied. *Id.* Indeed, routine or liberal application of the exceptions is not permitted, lest "the exception . . . undermine the general rule." *Id.* Put simply, the *Lands Council* exceptions must be administered in light of the Supreme Court's instruction that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Therefore, the party seeking to admit extra-record evidence must bear a heavy burden in demonstrating such actions are necessary to effectively review the agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

### Discussion

NEA seeks an order compelling the completion of the administrative record lodged by FWS.[1] NEA asserts twenty-one separate documents, all of which were allegedly "available to and indirectly considered by" FWS in preparing the Oregon BiOp, were improperly excluded from the administrative record and must now be included. (Mot., at 4, 8–10.) Alternatively, if the court determines the existing record is complete, NEA requests the court go beyond FWS's administrative record to consider the extra-record documents provided. (*Id.* at 5, 10–14.) NEA argues the court's consideration of the proffered documents, as well as the 2015 Idaho BiOp itself, is "'necessary to determine whether the agency has considered' all factors relevant to its biological opinion." (*Id.*) Defendants object to each of NEA's requests, arguing it fails to establish

---

[1] NEA's first claim for relief is alleged solely against FWS and arises under Section 706 of the APA. Thus, NEA seeks modification of FWS's administrative record only.

modification of FWS's administrative record is appropriate, or that an exception applies which would permit the court to consider extra-record material. Further, Defendants request the court "limit review of *all* claims in this case to the agencies' administrative records, without consideration of any extra-record evidence for any claim against either Defendant agency." (Def.'s Memo in Opp'n to Mot. to Complete and Suppl. the U.S. Fish and Wildlife Service's Administrative R., ECF No. 25 ("Def.'s Opp'n"), at 25 (emphasis added).) The court first addresses NEA's requests to complete the record or to consider extra-record evidence, before then addressing whether a blanket order restricting review of all claims to Defendants' respective administrative records is necessary or appropriate.

## I.    The "Completion" Theory

### A.    Overcoming the Presumption of Regularity

"An agency's designation and certification of the administrative record is treated like other established administrative procedures, and [is] thus entitled to a presumption of administrative regularity." *Audubon Soc'y of Portland v. Zinke*, Case No.1:17–cv–00069–CL, 2017 WL 6376464, at *3 (quoting *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007)) (internal citation omitted). A reviewing court therefore must "presume that [public officers] have properly discharged their official duties," *Id.*, and must assume the administrative record has been properly designated "absent clear evidence to the contrary.'" *Cook Inletkeeper v. EPA*, 400 Fed. App'x 239, 240 (9th Cir. 2010) (quoting *Bark MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). Numerous cases have set forth the presumption of regularity "as a foundation principle used to evaluate items or categories of items requested to be added to the administrative record." *Golden Gate Salmon Ass'n*, 2018 WL 3129849, at *4; *see also Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1232 (E.D. Cal 2013) (acknowledging the designation and

certification of the administrative record is entitled to a "presumption of regularity"); *Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 114 (noting "it is the responsibility of the deciding agency to compile the administrative record, and the agency is presumed to have properly done so"); *California v. U.S. Dep't of Labor*, No. 2:13–cv–02069–KJM–DAD, 2014 WL 1665290, at *4 (E.D. Cal. Apr. 24, 2014) (evaluating documents offered to complete the record against the "strong presumption" of regularity afforded to an agency's certification of the administrative record).

NEA alleges the "clear evidence" standard does not apply because it has not been formally adopted by the Ninth Circuit, and would place an insurmountable burden on any plaintiff seeking to complete the administrative record. (Pl.'s Reply to it Mot. to Complete and Suppl. the Administrative R., ECF No. 28 ("Reply"), at 4–5.) NEA's arguments are unpersuasive for three reasons. First, several district courts in the Ninth Circuit, including the District of Oregon, have utilized the "clear evidence" standard to evaluate requests to complete an administrative record. *See, e.g.*, *Audubon Soc'y of Portland*, 2017 WL 6376464, at *3 (explaining the administrative record is entitled to a presumption of regularity "[i]n the absence of clear evidence to the contrary"); *Ctr. For Biological Diversity v. U.S. Army Corps of Eng'rs*, No. CV 14–1667 PSG (Cwx), 2015 WL 3606419, at *2 (C.D. Cal. Feb. 4, 2015) ("'[t]he court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary"); *Gill v. Dep't of Justice*, Case No. 14-cv-03120-RS (KAW), 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015) ("'in the absence of clear evidence to the contrary, courts presume that public officers have properly discharged their official duties'"); *Pinnacle Armor*, 923 F. Supp. at 1232 ("The party seeking [completion] bears the burden of overcoming [the presumption of regularity] by 'clear evidence'"). Second, the Ninth Circuit has utilized the "clear evidence" standard in a non-binding

opinion. *Cook Inletkeeper*, 400 Fed. App'x at 240 (assuming the administrative record before it is properly designated in the absence of clear evidence to the contrary). NEA contends *Cook Inletkeeper* is of little consequence because "the court resolved a motion to *supplement* the administrative record" rather than a motion to complete the administrative record. (Reply, at 4 n.1.) NEA overlooks, however, that courts often refer interchangeably to *completing* and *supplementing* the record, and that the Ninth Circuit did so in that case. Third, NEA acknowledges it must provide "reasonable, non-speculative grounds for the belief that the documents were considered by the agency" — the evidentiary standard that must be met to overcome the presumption of regularity when a party moves to complete the administrative record. Thus, even if the court set aside the "clear evidence" standard, NEA agrees it must nevertheless carry an identical burden to justify completion of the administrative record.

  *B.* *NEA's Motion to Complete the Administrative Record*

  If it appears an agency relied on documents or materials not included in the administrative record, completion of the record is appropriate. *Portland Audobon Soc'y v. Endangered Species Comm'n*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citing *Pub. Power Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982)). A party seeking to complete the record must "put forth concrete evidence" to demonstrate the administrative record is incomplete. *Pac. Shores*, 448 F. Supp. 2d at 6. This burden is not met by simply "asserting that the documents are relevant, were before or in front of the [agency] at the time it made its decision, and were inadequately considered." *Id.* Instead, to overcome the presumption that FWS officials properly discharged their duties and that the administrative record is complete, NEA must "(1) 'identify reasonable non-speculative grounds for its belief that the documents [at issue] were considered by the agency and not included in the record,' and (2) 'identify the materials allegedly omitted from the record with sufficient

specificity, as opposed to merely proffering broad categories of documents . . . that are likely to exist.'" *Audubon Soc'y of Portland*, 2017 WL 6376464, at *4 (internal citations omitted).

NEA provides the name, author, and publication information of twenty-one separate documents, alleging FWS considered them to issue the Oregon BiOp but excluded them from the administrative record. (App'x to Pl.'s Mot. to Complete or Suppl. the Administrative R., ECF No. 20-1.) NEA contends the twenty-one documents were all "published in a peer-reviewed scientific journal or otherwise made available to [FWS's] staff biologists *prior* to issuance of the 2012 Oregon BiOp; each one directly relates to the issues [FWS] was considering when it wrote that BiOp—specifically, the impact of arsenic, selenium, or zinc on endangered bull trout or its habitat; and each one was expressly relied upon and cited by [FWS] just three years later when it wrote the 2015 Idaho BiOp[.]" (Mot., at 8–9.) NEA argues the "whole record" includes materials that were not directly relied upon by the agency to reach its decision, and asserts FWS "cannot plausibly argue [the documents offered] were not only available to, but were 'directly or indirectly considered by,' the agency when it wrote the 2012 Oregon BiOp." (*Id.* at 10.) On these grounds, NEA contends it has "rebutted whatever presumption of regularity [FWS] may enjoy in compiling the administrative record." (*Id.* at 9.)

There is no disputing NEA has identified the documents it seeks to admit with adequate specificity. The question, rather, is whether NEA has provided reasonable, non-speculative grounds for its belief that the documents it offers were considered by FWS, and thus, that the record is incomplete. FWS argues NEA has offered no evidence, much less "concrete evidence," the administrative record is incomplete. Specifically, FWS alleges NEA provides no evidence the twenty-one documents it offers were considered, in any capacity, in the preparation or issuance of the Oregon BiOp.

*Audubon Society of Portland v. Zinke* and *Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior* both illustrate the burden that must be carried by a party seeking completion of the administrative record. In *Audubon Society of Portland*, the plaintiff challenged a Record of Decision, Final Comprehensive Conservation Plan (the "Plan"), and Final Environmental Impact Statement prepared by the Secretary of the Interior and FWS. 2017 WL 6376464, at *1. The plaintiff moved to include four Solicitor's Opinions from the years 1978, 1987, 1994, and 1997 in the administrative record, arguing the Opinions had been explicitly referenced in public comments to the draft Plan, and had been specifically requested for inclusion in the administrative record. *Id.* at *4. Seeking to complete the record, the plaintiff alleged the defendants read and responded to those comments, included a Solicitor's Opinion from 1995 in the record, and otherwise had no "legitimate reason . . . for selectively reviewing and locating only some relevant Solicitor's Opinions and excluding others." *Id.* The plaintiff argued such facts demonstrated "the opinions were before the relevant decision-makers and, at the very least, indirectly considered." *Id.*

Judge Clarke disagreed, finding "[t]he mere fact that the 1976, 1987, 1994, and 1997 Solicitor's Opinions were cited in the comments of the draft Plan does not mean the opinions themselves were considered." *Id.* at *5. Emphasizing that the administrative record "is strictly limited to those documents that were in fact in front of the administrative agency during the decision-making process," Judge Clarke determined a mere reference to the Solicitor's Opinions in a comment to the draft Plan was not enough to establish they were "'placed before the agency prior to the issuance of [the decision].'" *Id.* Furthermore, Judge Clarke found Audubon's contention that FWS had no legitimate reasons for locating and reviewing the 1995 Solicitor's Opinion while excluding others wholly speculative. *Id.* More than speculation was necessary, he reasoned, "to successfully overcome the strong presumption that the administrative record was

properly designated." *Id.* Accordingly, Audubon's motion to include the additional Solicitor's Opinions in the administrative record was denied.

Similar reasoning was employed by the D.C. District Court in *Cape Hatteras Access Preservation Alliance*. There, the plaintiff challenged FWS's designation of critical habitats relating to the preservation of the piping plover, a threatened species of shorebird, and sought to complete the record with a previously issued BiOp used to evaluate the *Cape Hatteras National Seashore's Interim Protected Species Management Strategy* (the *"Interim Strategy"*). *Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 112. Both parties agreed the BiOp was "substantially relied on" by the National Park Service in developing the *Interim Strategy*, and that the *Interim Strategy* was before FWS when it designated the critical habitats. *Id.* at 113. FWS, however, argued the *BiOp* was not before it when it made its decision to designate habitats critical to the conservation of the piping plover. *Id.* at 114. Though the National Park Service had heavily relied on the BiOp to issue the *Interim Strategy*, the *Cape Hatteras* court determined "that fact alone [did] not mean it was actually before the agency when it made its current decision." *Id.* To be sure, many of the documents contained in the administrative record explicitly referenced the BiOp, but the *Cape Hatteras* court determined such references were not enough to warrant its inclusion. *Id.* Because the plaintiffs failed to produce any concrete evidence the BiOp was before FWS at the time of decision, the plaintiff failed to rebut the "strong presumption" the administrative record was properly designated, and the plaintiff's motion to complete the record was denied. *Id.*

Here, NEA provides no evidence that FWS was aware, even peripherally as in *Audubon Society* and *Cape Hatteras*, of the twenty-one documents at issue when it developed the Oregon BiOp. Indeed, NEA insists the documents were relevant and available to FWS prior to issuing the Oregon BiOp, but stops short of providing any evidence they were actually before the agency at

that time. Instead, NEA appears to conclude that the mere existence and alleged availability of the documents necessarily means they were considered by FWS, at least indirectly. A similar argument was explicitly rejected by Judge Clarke in *Audubon Society*, and must also be rejected here. Furthermore, NEA's contention that FWS "cannot plausibly argue" the documents at issue were unavailable or not considered in issuing the Oregon BiOp is wholly speculative, and fails to rebut the presumption that the administrative record, as designated by FWS, is complete. Lastly, NEA's reliance on the 2015 Idaho BiOp is misplaced. As demonstrated, explicit references to a particular document, even when made by the agency in relevant contexts, do not necessarily demonstrate the document was before that agency when the decision was made. Moreover, the Idaho BiOp was issued three years later in a different state. NEA thus asks this court to simply infer an inverted causal connection exists between the substance of the Idaho BiOp, and the substance of the Oregon BiOp, which contained no references to the twenty-one documents whatsoever, released three years prior. To do so would go beyond mere speculation to stretch the bounds of logic, and cannot serve as a justification to disturb the administrative record lodged by FWS. Accordingly, NEA's Motion, insofar as it requests the court to complete the administrative record, is DENIED.

## II.    The "Supplementation" Theory

The court may consider extra-record evidence if the party seeking to admit such evidence sufficiently shows an exception to the record review rule applies. *Lands Council*, 395 F.3d at 1030. The burden is on the moving party to demonstrate an exception applies, and a district court's decision to forego expanding the administrative record is reviewed for an abuse of discretion. *Locke*, 776 F.3d at 993; *Fence Creek Cattle Co.*, 602 F.3d at 1131. NEA briefly suggests the materials it offers are necessary to explain technical subject matter, but it focuses the entirety of

its briefing on the "relevant factors" exception — the admission of extra-record evidence to determine "whether the agency has considered all relevant factors and has explained its decision." *Sw Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996). Because the burden is on NEA to demonstrate an exception applies, and it offers argument pertaining only to the relevant factors exception, the court does not address the applicability of other exceptions to the record review rule.

A.      *Application of the "Relevant Factors" Exception*

The relevant factors exception "is the most difficult to apply." *Locke*, 776 F.3d at 993 (citing *Asarco*, 616 F.2d at 1159). The Ninth Circuit has clarified a reviewing court may admit extra-record evidence under this exception "only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *Id.* Indeed, "the relevant factors exception permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis, [but] the exception does not permit district courts to use extra-record evidence to judge the wisdom of agency action." *Id.* (citing *Asarco*, 616 F.2d at 1160). Thus, extra-record evidence admitted under this exception may not be considered "as a basis for questioning the agency's scientific analyses or conclusions." *Id.*

FWS contends the proper application of the relevant factors exception begins with *Animal Def. Council v. Hodel*, 840 F.2d 1432 (9th Cir. 1988). (Def.'s Opp'n, at 6–9.) There, the Ninth Circuit explained consideration of extra-record evidence is inappropriate where the plaintiff "makes no showing that the district court needed to go outside the administrative record to determine whether the [agency] ignored information." *Hodel*, 840 F.2d at 1437. FWS thus argues a party seeking to invoke the relevant factors exception must first demonstrate the administrative

record is inadequate to effectively review the challenged action. (Def.'s Opp'n at 6–9). FWS submits that if the moving party is able to carry this heavy burden, it must then show that each of the documents it seeks to admit fall within the "relevant factors" exception. Such a showing, FWS argues, requires more than merely demonstrating each document is relevant to the issue at hand. Instead, the party must identify "entirely new" subject matter overlooked by the defending agency, and demonstrate each document "do[es] more than raise 'nuanced points' about a particular issue." *Pinnacle Armor*, 923 F. Supp. 2d at 1234. Therefore, under the application advanced by FWS, the "relevant factors" exception applies only where a defendant "fail[s] to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration." *In re Delta Smelt Consol. Cases*, No. 1:09–CV–1053 OWW DLB, 2012 WL 2520946, at *5 (E.D. Cal. June 21, 2010).

NEA challenges FWS's application of the relevant factors exception on several grounds. First, NEA claims it need not show the record is inadequate before an exception may be applied, arguing *Hodel* is not on point. (Reply, at 6.) In support of its argument, NEA cites *San Luis & Delta-Mendota v. Locke*, ostensibly for the simple proposition that a district court may freely admit extra-record evidence to "'develop a background against which it can evaluate the integrity of the agency's analysis.'" (Reply, at 7 (quoting *Locke*, 776 F.3d at 993).) The *Locke* court, however, concerned itself with the manner in which the district court used extra-record evidence, not the criteria employed to justify its consideration under the *Lands Council* exceptions. *Locke*, 776 F.3d at 993 (finding the district court abused its discretion by relying on more than forty expert declarations admitted under *Lands Council* "to question the wisdom of [the agency's] judgment"). *Locke* therefore provides little support for NEA's position on this issue. NEA also cites *Asarco v. EPA*, relying on the Ninth Circuit's observations that, in cases hinging on highly technical matters,

it is often impossible for a court to determine whether the agency took into account all the relevant factors without going beyond the administrative record, and that a court cannot properly engage in a "substantial inquiry" of the challenged action if it must take the agency's word that all factors were considered. *Asarco*, 616 F.2d at 1160. While this may be true, the *Asarco* court was commenting on the propriety of considering evidence outside the record generally. *Id. Asarco* thus does not stand for the broader proposition that district courts must indiscriminately consider all extra-record evidence that may provide any context against which an agency's action may be judged, regardless of whether such evidence is necessary.

Moreover, there is ample authority, in the Ninth Circuit and this district, demonstrating that a party seeking to invoke the *Lands Council* exceptions must first show the administrative record is inadequate to effectively review the challenged action. *See Fence Creek Cattle Co.*, 602 F.3d at 1131 (denying consideration of extra-record evidence where plaintiff failed to "show the additional materials sought [were] necessary to adequately review the Forest Service's decision"); *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014) ("*Jewell*") (citing *Hodel* for the proposition that the plaintiff is required to demonstrate why the district court must go outside the administrative record); *Bark v. Northrop*, 2 F. Supp. 3d 1147, 1153 (D. Or. 2014) (denying discovery outside the administrative record where "plaintiffs [did] not demonstrate how the 30,000-page record and 1,500-page supplementary record are so insufficient as to frustrate effective judicial review of plaintiffs' claims"); *Audubon Soc'y of Portland*, 2017 WL 6376464, at *7 (consideration of extra-record evidence "requires clear evidence demonstrating that the existing administrative record is inadequate and will frustrate judicial review"); *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *5 (noting extra-record material may not be admitted under any of the exceptions to the record review rule unless the plaintiff first demonstrates the record is

inadequate); *Ctr for Biological Diversity v. Jewell*, No. CV–12–02296–PHX–DGC, 2014 WL 116408, at *2 (D. Ariz. Jan. 13, 2014) (declining to consider extra-record evidence where plaintiffs simply "seem[ed] dissatisfied with the conclusions reached by Defendants" and sought to include "a report that could be favorable to their position," rather than demonstrating that failure to include the proffered evidence would "effectively frustrate[] judicial review"). To be sure, such a requirement is in keeping with the Ninth Circuit's instruction that the *Lands Council* exceptions are to be narrowly construed, and the factual differences on which NEA attempts to distinguish *Hodel* have no bearing on the application of this basic principle. NEA's arguments thus are unavailing.

Second, NEA claims the relevant factors exception applies whether or not it demonstrates FWS failed to consider an entire "general subject matter" relevant to the decision. (Reply, at 7.) NEA argues the narrow interpretation advanced by FWS "simply isn't the law in [the] Ninth Circuit, and NEA has found a District of Oregon case holding as much." (*Id.* at 8.) Though NEA does not explicitly name a case from this district rejecting the "general subject matter" standard, it later cites *National Wildlife Federation v. National Marine Fisheries Service*, No. 3:01–CV–00640–SI, 2015 WL 423090, at *1 (D. Or. Feb. 2, 2015), as evidence of courts in this district "correctly appl[ying] the *Lands Council* exceptions." (*Id.*) In that case, the National Wildlife Federation ("NWF") challenged a BiOp issued by the National Marine Fisheries Service ("NMFS"), and NWF and the State of Oregon sought to admit 226 pages of expert declarations and attached exhibits in support of their motions for summary judgment. *Nat'l Wildlife Fed'n*, 2015 WL 423090, at *1. Citing the court's duty to conduct a "sufficiently probing" review, Judge Simon rejected NMFS's argument that extra-record evidence was unnecessary, and determined "some of the information in the declarations may be necessary to identify factors [NMFS] did or

did not consider or to explain complex scientific or technical analyses." *Id.* at \*4. Judge Simon thus permitted consideration of the extra-record evidence, but "only to the extent that the declarations are necessary to determine whether the agency failed to consider certain factors or whether any such omitted factors are even relevant to develop a sufficient background against which the Court can evaluate the integrity of the agency's analysis." *Id.* at \*5.

Several factors, however, detract from the persuasive force of *National Wildlife Federation* in this case. For example, NWF and Oregon both requested consideration of the extra-record materials as part of a motion for summary judgment. At that late stage of the litigation, the parties likely were able to elaborate on the necessity of such materials, including what factors were allegedly overlooked by NMFS. Indeed, the materials offered consisted solely of expert declarations with attached exhibits, which presumably explained the "gaps or holes in the administrative record" in need of remedy. Furthermore, Judge Simon simply concluded the proffered materials contained information that fit within two exceptions to the record review rule. There is little analysis to explain his conclusion, but a footnote indicates the extra-record declarations were "narrowly-tailored." *Id.* at \*4 n.3. The court can infer the information offered was "narrowly tailored" to supplement those portions of the administrative record so lacking as to effectively frustrate judicial review of the claims at hand. Put simply, Judge Simon's opinion suggests he did not admit the extra-record evidence on the bare assertion that doing so was necessary to ensure the agency considered all relevant factors in reaching its decision.

The plain language of the relevant factors exception counsels against the inclusive application NEA advances here. The language of the exception requires the moving party to demonstrate admission of the extra-record evidence it proffers is necessary to determine whether the agency considered all relevant factors in reaching a decision. The question, however, is simply

whether an agency considered all relevant factors, not whether an agency considered those factors in a specific way, or considered all evidence that may be brought to bear on a specific relevant factor considered by the agency. Requiring record evidence to be more than merely relevant to the topic at hand, therefore, is in keeping with the plain language of the exception and with the Ninth Circuit's instruction that the *Lands Council* exceptions are to be narrowly construed and applied, lest they swallow the rule. Moreover, requiring a moving party to identify general subject matter demonstrably relevant to the decision, but wholly neglected by the deciding agency, appears to better align with a narrow reading of the relevant factors exception than simply admitting wholesale any extra-record evidence claimed to be necessary under that exception. As the Eastern District of California observed, "[t]o hold otherwise would allow [parties seeking consideration of extra-record evidence] to drive a truck through what is supposed to be a narrow exception to the record review rule." *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *5. Another court in this district has arrived at a similar conclusion. *See, e.g.*, *Audubon Soc'y of Portland*, 2017 WL 6376464, at *6 (declining to consider extra-record evidence when the plaintiff proffered documents that did "not opine on an entirely new general subject matter previously unconsidered by decision-makers"). Because FWS advances a narrow application of the relevant factors exception as instructed by the Ninth Circuit, and because other courts, including courts in this district, have adopted the same, this court similarly adopts the narrow application of the relevant factors exception advanced by FWS, and rejects the liberal reading of the exception offered by NEA.

### B.      NWEA's Request to Consider Extra-Record Evidence

NEA argues consideration of the twenty-one documents is necessary to demonstrate FWS "failed to comply with ESA Section 7(a)(2) and the Service's implementing regulations at 50

C.F.R. § 402.14(g)(8), and failed to consider all relevant factors related to the potential impacts of toxic water pollution on bull trout in Oregon." (Mot., at 13.) Specifically, NEA contends the proffered materials "are necessary to ascertain, *inter alia*, whether [FWS] issued its 2012 Oregon BiOp based upon the 'best scientific data available' as required by Section 7(a)(2) of the ESA or otherwise failed to 'consider the relevant factors in reaching its decision' as reflected in the Oregon BiOp." (Reply, at 6.) NEA also requests consideration of the 2015 Idaho BiOp, arguing it, too, demonstrates FWS "failed to consider all relevant factors related to the potential impacts of toxic water pollution on bull trout in Oregon." (Mot., at 13.) FWS responds that NEA "has entirely shirked its heavy burden to show the [relevant factors] exception applies, in any fashion," to any of the documents it seeks to admit. FWS alleges NEA's interpretation of the relevant factors exception is overly broad, and contends both the Oregon BiOp and attendant administrative record address the issues NEA alleges FWS ignored. (Def.'s Opp'n, at 12, 14–15.)

To support its argument, NEA cites *Wild Fish Conservancy v. EPA*, C08-0156-JCC, 2009 WL 10670069, at *1 (W.D. Wash. Dec. 18, 2009). In that case, Wild Fish Conservancy ("WFC") filed suit against the EPA and NMFS for, *inter alia*, ignoring the best scientific data available when approving Washington regulations exempting Puget Sound salmon farms from general sediment-management standards. *Id.* WFC sought to complete the record, requesting the court consider, among other things, the results of a Washington State Department of Fish & Wildlife study of sea-lice infestation in Atlantic salmon. *Id.* at *4. WFC's theory of the case was that the EPA and NMFS had "ignored scientific data that was readily available," and WFC intended to prove its case by demonstrating the State Department of Fish & Wildlife maintained superior scientific and commercial data than the information used by the agencies to reach their decision. *Id.* The district court found the WFC's argument likely had merit, citing a state law which required all salmon

farm operators to monitor their fish for sea-lice and report to the State Department of Fish & Wildlife if there is any "increase in occurrence, infestations, outbreaks, or situations . . . impacting fish health." *Id.* Though the agencies had considered the dangers that sea-lice from salmon farms might create for wild salmon in the abstract, they had not considered the data collected by the State Department of Fish & Wildlife, which possibly constituted better scientific or commercial data than that relied on by the agencies. *Id.* Finding it would be "impossible . . . to pass upon the validity of [WFC's] claim without considering other information that was available to Defendants when they rendered a decision," the district court granted the motion to consider extra-record evidence. *Id.* at *5.

As an initial matter, *Wild Fish Conservancy* does not explicitly address the proper scope of the relevant factors exception as discussed above, and thus its persuasive value is limited. Though the district court's conclusion that it would be nearly impossible to pass on the validity of a claim that an agency did not consider the best scientific data available is facially reasonable, other cases involving similar claims have nevertheless required the proffered evidence to demonstrate more than a "nuanced point" about a relevant factor already considered by the deciding agency. *See, e.g., Audubon Soc'y of Portland*, 2017 WL 6376464, at *8 ("Here, at best, all Audubon has shown is that these opinions, which are non-legally binding interpretations of the act, provide a more nuanced, longitudinal understanding of Federal Defendants' responsibilities under the Kuchel Act, but it does not opine on an entirely new general subject matter previously unconsidered by decision-makers, since the Kuchel Act is discussed in the administrative record"); *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *5 (rejecting consideration of a document claimed to demonstrate the defendant's failure to "give appropriate consideration to the prevalence of centrarchids, particularly the largemouth bass, in the Delta, and the degree to which their

predation on migrating salmon has compromised certain salmonid ESUs as a result" which raised only "nuanced points about predation").

Even if the court adopted a more liberal application of the relevant factors exception as urged by NEA, the instant case is distinguishable from *Wild Fish Conservancy*. Though NEA advances the same argument found persuasive in *Wild Fish Conservancy*, it neglects to point to any credible evidence suggesting the twenty-one documents constitute superior scientific data than that considered in the preparation of the 2012 Oregon BiOp. Indeed, when pressed on this point during oral argument on the motion, NEA conceded it could not comment on the scientific quality of the twenty-one documents aside from the fact that they were referenced in the Idaho BiOp three years later. Unlike the specificity with which WFC requested consideration of detailed, current data collected by the State Department of Fish & Wildlife in *Wild Fish Conservancy*, NEA simply asserts the documents constitute the best scientific data available because they were referenced in the Idaho BiOp. It is a dubious proposition that such an assertion, standing alone, is enough to warrant consideration of extra-record evidence under *Lands Council*. Further, NEA argues the documents were ignored by FWS in preparing the Oregon BiOp, but provides only a one-sentence blurb explaining each document's general relevance, and a brief description of the general subject matter referenced in the 2015 Idaho BiOp. NEA offers no indication as to whether or how the specific scientific information contained in the proffered documents is used in the Oregon BiOp. Indeed, NEA does not cite to the Oregon BiOp once in its briefing, and this court is not inclined to scour the administrative record on NEA's behalf to find evidence supporting its current motion.

Generally, "what constitutes the best scientific and commercial data available is itself a scientific determination deserving of deference." *Locke*, 776 F.3d at 995 (citing *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1265 (11th Cir. 2009)). The Ninth Circuit has

made clear that a reviewing court "should be especially wary of overturning such a determination on review." *Locke*, 776 F.3d at 995 (citing *In re Consol. Salmonid Cases*, 791 F. Supp. 2d 802, 821 (E.D. Cal. 2011)). With this directive in mind, the court finds that NEA has fallen far short of meeting its burden to justify consideration of any of the documents offered under *Lands Council*. As explained above, NEA neglects to identify any area of general subject matter that was not addressed in the Oregon BiOp. In fact, NEA does not discuss the substance of the Oregon BiOp at all.

Even if this court applied the relevant factors exception more broadly, NEA would still fail to meet its burden to validate consideration of extra-record evidence under the circumstances. As explained in considerable detail, consideration of extra-record evidence requires clear evidence that the existing record is inadequate to effectively review the claims at bar, and NEA simply states, in conclusory fashion, that the evidence it offers is necessary to determine whether FWS considered all relevant factors in producing the Oregon BiOp. Simply invoking the relevant factors exception is not enough to warrant going beyond the administrative record provided in this case. Accordingly, NEA's Motion, insofar as it seeks to incorporate extra-record evidence in the court's review under the APA, is DENIED.

C. *The 2015 Idaho BiOp Will Not Be Considered*

NEA also requests the court consider the 2015 Idaho BiOp itself, arguing "its inclusion in the record here will further effective judicial review because it shows how [FWS] ignored important aspects of the problem, and because its inclusion will allow the parties and the [c]ourt to 'explain technical terms or complex subject matter' contained in the underlying [twenty-one] biological studies." (Mot., at 5.) The Ninth Circuit has made clear, however, that "post-decision information . . . may not be advanced as a new rationalization either for sustaining or attacking an

agency's decision." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1451–52. To be sure, consideration of post-decisional information has consistently been denied by courts in this circuit. *See, e.g.*, *Jewell*, 747 F.3d at 605 ("Just as we will not allow the agency to supply post-hoc rationalizations for its actions, so 'post-decision information . . . may not be advanced . . . '"); *Klamath Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, No. 1:12–cv–1558–CL, 2014 WL 525116, at *4 (D. Or. Feb. 6, 2014) ("exceptions to the normal rule regarding consideration of extra-record materials 'only appl[y] to information available at the time, not post-decisional information.'"). Because NEA now relies on the Idaho BiOp to question the wisdom of the previously issued Oregon BiOp, consideration of the Idaho BiOp in the court's review of NEA's APA claim is DENIED.

III.    Scope of Review for NWEA's ESA Claims

In a footnote, NEA clarified the instant Motion pertains to only its first claim for relief under the APA. (Mot., at 6 n.5.) NEA states its remaining claims arise under the ESA, are not bound by the record review rule, and that the court "'may consider evidence outside the administrative record for the limited purposes of reviewing' those claims." (*Id.*) In response, FWS requests an order from this court limiting review of all claims in this case to the administrative records lodged by Defendants, "without consideration of any extra-record evidence for any claim against either Defendant agency." (Def.'s Opp'n, at 25.) FWS dedicates eight pages to arguing its request in its Response to NWEA's Motion, and NWEA likewise dedicates a substantial portion of its Reply to opposing the request. Because both parties had opportunity to brief the issue and both addressed it during oral argument, resolution of FWS's request is appropriate here.

A.    *The ESA Citizen Suit Provision and the APA*

The ESA provides a private right of action for individuals under three circumstances:

(A) to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof; or

(B) to compel the Secretary to apply . . . the prohibitions set forth in or authorized pursuant to section 1533(d) or 1538(a)(1)(B) or this title with respect to the taking of any resident endangered species or threatened species within any State; or

(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary

16 U.S.C. § 1540(g)(1). The Supreme Court clarified the scope of the citizen-suit provision in *Bennett v. Spear*, 520 U.S. 154 (1997). That case involved a challenge to a BiOp issued by FWS concerning the impact of an irrigation project on two varieties of endangered fish. Considering the various claims at issue, the Supreme Court determined the ESA's citizen-suit provision did not provide a means to challenge FWS's administration of Section 7, the same ESA Section at issue here. *Id.* at 175–77. The Court's conclusion stemmed from subsection (C)'s explicit authorization of citizen-suits against the Secretary for failure to perform his or her duties under Section 4, which implied the Secretary's failure to perform the duties outlined in other ESA Sections could not be challenged using the citizen-suit provision. Though subsection (A) permits a citizen to bring suit against "any person . . . alleged to be in violation of any provision" of the ESA, the Court held that "violation," as used by subsection (A), does not "refer to failure by the Secretary or other federal officers and employees to perform their duties in administering the Act." *Id.* at 173. Thus, under *Bennett*, ESA citizen-suits "may enforce the substantive provisions of the ESA against regulated parties — both private entities and Government agencies — but it is not an alternative avenue for judicial review of the Secretary's implementation of the statute." *Id.*

The *Bennett* Court went on to explain, however, that challenges to federal implementation of the ESA could be reviewed under the APA. *Id.* at 175. Specifically, the Court noted that the APA provides "a right to judicial review of all 'final agency action for which there is no other

adequate remedy in a court." *Id.* (citing 5 U.S.C. § 704). As expressly observed by the Ninth Circuit, the citizen-suit provision "creates an express, adequate remedy" because it "independently authorizes a private right of action." *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005). Thus, those claims that cannot be reviewed pursuant to the ESA's citizen-suit provision are subject to review under the APA. A plaintiff therefore "never has a choice as to whether to bring a particular claim under the APA or the ESA. Only one statute will authorize suit, and which statute applies is determined by the nature of the challenged action." *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. CIV. S–06–2845 LKK/JFM, 2008 WL 11400759, at *5 (E.D. Cal. Dec. 23, 2008). In accordance with *Bennett*, NEA concedes its first claim is properly brought under the APA. (Compl. ¶ 38.) The remainder allegedly arise under the citizen-suit provision of the ESA.

       *B.*    *Scope of Review for ESA Citizen-Suits*

The Ninth Circuit has specified that review of administrative decisions involving the ESA is guided by the arbitrary and capricious standard of review articulated by Section 706 of the APA. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 450 F.3d 903, 934 n.4 (9th Cir. 2006); *see also Pac. Coast Fed. Of Fishermen's Ass'n, Inc. v. Nat'l. Marine Fisheries Serv.*, 265 F.3d 1028 (9th Cir. 2001) ("Agency decisions under ESA are governed by the Administrative Procedure Act, which requires an agency action to be upheld unless it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'"); *W. Watersheds Proj. v. Kraayenbrink*, 632 F.3d 472, 481 (9th Cir. 2011) ("We review claims brought under the ESA under the citizen-suit provision of the ESA or, when the citizen-suit provision is unavailable, under the APA"). Accordingly, such review is generally confined to the administrative record that was before the agency at the time of decision. 5 U.S.C. § 706 ("[In determining whether the agency's

actions were arbitrary and capricious], the court shall review the whole record or those parts of it cited by a party . . . "). Many Ninth Circuit cases involving the ESA, however, fail to identify whether the cause of action arises under the APA or under the ESA citizen-suit provision. The ESA does not provide an independent standard of review, but "challenges to agency actions are subject to the APA's judicial review standard unless Congress specifies a contrary intent." *Ninilchik Traditional Council v. U.S.*, 227 F.3d 1186, 1193 (9th Cir. 2000); *see also Locke*, 776 F.3d at 994 ("The ESA does not provide its own standard of judicial review, so we evaluate the BiOp under the APA's arbitrary [and] capricious standard."). Therefore, "[i]rrespective of whether an ESA claim is brought under the APA or the citizen-suit provision, the APA's 'arbitrary and capricious' standard applies." *Kraayenbrink*, 632 F.3d at 481.

NEA alleges its second, third, and fourth claims for relief arise under the ESA, a characterization that is not contested by FWS. Both parties agree the APA's arbitrary and capricious *standard* of review applies, but dispute whether the *scope* of review is similarly borrowed from the APA when the claim arises under the citizen-suit provision of the ESA. NEA alleges review of agency action under such circumstances is not limited to the administrative record, citing two Ninth Circuit cases: *Washington Toxics Coalition v. EPA* and *Western Watersheds Project v. Kraayenbrink*. In *Washington Toxics*, the plaintiff alleged the EPA had violated the ESA by failing to consult with NMFS before approving registration of harmful pesticides. 413 F.3d at 1028. After a hearing, which included significant evidence on the appropriate scope of injunctive relief and the effects of the pesticides, the district court enjoined the EPA's authorization of certain pesticides pending compliance with the ESA. *Id.* at 1031. On appeal, an intervening defendant argued the district court had erred by not limiting its review to the administrative record in accordance with the APA. *Id.* at 1034. The Ninth Circuit held that

"suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA." *Id.* Thus, because the plaintiff's claims arose under the citizen-suit provision of the ESA, a "substantive statute [which] independently authorizes a private right of action, the APA d[id] not govern the plaintiffs' claims." *Id.*

In *Kraayenbrink*, the plaintiff alleged, among other things, that the Bureau of Land Management neglected to consult with FWS in promulgating amendments to its grazing regulations in violation of Section 7 of the ESA. 632 F.3d at 476–77. The plaintiff was permitted to submit extra-record evidence in support of its claim that the regulations "may affect" endangered species, thereby triggering the formal consultation requirement under the ESA. On appeal, the intervening defendants argued the court could not go beyond the administrative record to conduct a review under the ESA. Relying on *Washington Toxics*, the *Kraayenbrink* court determined the APA did not apply because the ESA provided a remedy through the citizen-suit provision. *Id.* at 497. *Kraayenbrink* thus reaffirmed the Ninth Circuit's holding in *Washington Toxics*: "the APA applies only where there is 'no other adequate remedy in a court' . . . and—because the ESA provides a citizen suit remedy—the APA does not apply in such actions." *Id.* (citing *Wash. Toxics*, 413 F.3d at 1034). Accordingly, the Ninth Circuit determined it could consider extra-record evidence "for the limited purposes of reviewing Plaintiffs' ESA claim." *Id.*

*Kraayenbrink*, however, has not been consistently applied. Indeed, district courts in this circuit appear somewhat split as to the broader implications of *Washington Toxics* and *Kraayenbrink. See Wildearth Guardians v. U.S. Forest Serv..*, No. CV–10–00385–TUC–DCB, 2011 WL 11717437, at *1*2 (D. Ariz. Apr. 22, 2011) (noting *Kraayenbrink* "represents a sharp departure from the traditional rule of limiting the scope of review of agency action to the agency record," but acknowledging that "claims brought under the citizen suit provision of the ESA may

not be subject to the same rules as those brought under the APA"); *Sierra Club v. McLerran*, No. C11–1759RSL, 2012 WL 5449681, at *2 (W.D. Wash. Nov. 6, 2012) (finding the Ninth Circuit merely "ratified the district courts' use of discretion . . . to supplement the record" in *Washington Toxics* and *Kraayenbrink*, and noting "it is a far cry to state that those cases require a district court to engage in *de novo* review of the record, or that the APA's standards are inapt guidelines"); *All. for Wild Rockies v. Kruger*, 950 F. Supp. 2d 1172, 1177 (D. Mont. 2013) ("*Kraayenbrink* leaves us uncertain whether the panel discarded the APA record review rule entirely or simply found that the extra-record documents presented to the district court in that case fit within one of the four standard exceptions outlined [by *Lands Council*]. The better view, in the opinion of this Court, is that the traditional four exceptions still apply to plaintiffs' requests for supplementation of the administrative record for ESA claims, but the narrowness of the construction and application of these exceptions . . . should be relaxed for such claims"); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, 384 F. Supp. 3d 1111, 1119 (N.D. Cal 2019) (noting "[a] few courts appear on occasion to have afforded a broader consideration of extra-record materials in ESA disputes," but finding "the material in the administrative record is sufficient to resolve the cross-motions without resort to external materials"); *but see Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, 992 F. Supp. 2d 1095, 1106 (D. Or. 2014) (noting a claim arising under the ESA's citizen-suit provision "is evaluated with any admissible evidence and is not limited to the administrative record"); *Nw. Coal. For Alternatives to Pesticides v. EPA*, 920 F. Supp. 2d 1168, 1174–75 (W.D. Wash. 2013) (considering extra-record evidence in a "failure to act" case brought under the ESA, and rejecting arguments that *Kraayenbrink* and *Washington Toxics* did not apply); *Wildearth Guardians v. U.S. Fed. Emergency Mgmt. Agency*, No. CV 10–863–PHX–MHM, 2011 WL 905656 (D. Ariz. Mar. 15, 2011) (explaining that, in *Kraayenbrink*, the Ninth Circuit "stated

unequivocally that the scope of review for ESA citizen-suit claims is not provided for by the APA and as a result parties may submit and the court may consider evidence outside the administrative record," and distinguishing between the scope of review and the standard of review); *Conservation Congress v. U.S. Forest Serv.*, 2017 WL 4340254, at *1–*2 (E.D. Cal. Sept. 29, 2017) (finding that "there can be no question that the Court in this case 'may consider evidence outside the administrative record'" for the limited purpose of reviewing the plaintiff's ESA citizen-suit claims, and rejecting the defendant's argument that review under the arbitrary and capricious standard requires the scope of review to adhere to the administrative record). FWS attempts to dispel this confusion using two general areas of argument: (1) *Washington Toxics* and *Kraayenbrink* do not negate long-standing precedent applying the APA standard and scope of review to ESA claims, but merely authorizes supplementation of the record under certain facts; and (2) any lingering confusion created by *Washington Toxics* and *Kraayenbrink* was put to rest by *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012). (Def.'s Opp'n, at 25–29.)

In its first area of argument, FWS attempts to negate *Washington Toxics* and *Kraayenbrink* with prevailing Supreme Court and Ninth Circuit precedent. However, many of the cases cited by FWS are easily distinguishable or do not address the circumstances at issue here. For example, as pointed out by NEA, FWS heavily relies on *United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963), a case which addressed the appropriate scope of review under the Wunderlich Act. The purpose of the Act was to allow review of federal agency decisions, and accordingly, the Supreme Court limited review to the administrative record and rejected *de novo* review. The citizen-suit provision of the ESA, on the other hand, provides a mechanism by which private individuals can enforce the substantive provisions of the ESA against regulated agencies, and thus "adjudication of an ESA citizen-suit claim requires a broader, more searching analysis than the administrative

record can provide." *Nw. Envtl. Advocates v. U.S. DOC*, Case No. C16-1866-JCC, 207 U.S. Dist. LEXIS 185295, at *2–*3 (W.D. Wash. Nov. 8, 2017).[2] This distinction was recognized in this district by Judge Haggerty in *Oregon Natural Desert Association v. Kimbell*, 593 F. Supp. 2d 1217 (D. Or. 2009). In that case, Judge Haggerty reviewed a challenge to an order permitting the plaintiff to introduce extra-record evidence under Sections 7 and 9 of the ESA. Considering the scope of review for such claims, Judge Haggerty noted that they "do not challenge specific administrative decisions," but instead "advance an enforcement action and require proof of harm and causation." *Id.* at 1220. Noting the magistrate judge's reliance on *Washington Toxics*, Judge Haggerty acknowledged that while claims "challenging the propriety of a . . . biological opinion [are] governed by the APA," those claims "arising directly under the ESA Citizen Suit Provision . . . based upon events occurring in the aftermath of agency decisions, are not limited by the APA scope of review." *Id.* (citing *Wash. Toxics*, 413 F.3d at 1034). Other case law cited by FWS is similarly unavailing to negate the distinction between enforcement claims arising under the citizen-suit provision of the ESA and claims challenging agency implementation of the ESA arising under the APA as differentiated by the Supreme Court in *Bennett*.

In its second area of argument, FWS claims *Washington Toxics* and *Kraayenbrink* have been overruled by *Karuk Tribe*. In that case, the Ninth Circuit, sitting *en banc*, considered whether the Forest Service's approval of notices of intent to conduct mining activity in the Klamath National Forest amounted to "agency action" that "may affect" a threatened species or its critical habitat. *Karuk Tribe*, 681 F.3d at 1011. Though FWS insists that the *en banc* Ninth Circuit held "that a failure to consult claim raised under the ESA citizen-suit provision 'is reviewed under the Administrative Procedure Act' and 'is a record review case,'" the language cited was included

---

[2] This opinion is unavailable on Westlaw, but is attached to NEA's Reply for convenience.

under the "Standard of Review" section, and the court does not discuss *Washington Toxics* or *Kraayenbrink*. *Id.* at 1017. Thus, the Ninth Circuit did not "hold" that ESA citizen-suits must adhere to the scope of review set forth in the APA, and *Karuk Tribe* did not quietly overrule *Washington Toxics* or *Kraayenbrink*. Indeed, *Karuk Tribe* did not discuss *Washington Toxics* or *Kraayenbrink* at all. More than one court in this circuit has reached the same conclusion. *See Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1124 (N.D. Cal. 2017) ("[t]here is no indication that the Ninth Circuit intended [the 'record review case;] statement to overrule the reasoning in *Washington Toxics* and *Kraayenbrink*; those cases are neither cited nor discussed in *Karuk Tribe*"); *Nw. Coal. For Alternatives to Pesticides*, 920 F. Supp. 2d at 1174 ("*Karuk Tribe* cannot reasonably be read to implicitly or silently overrule the Ninth Circuit's reasoned holdings that, in circumstances where a plaintiff challenges a federal agency's failure to act under the citizen suit provision of the ESA, review is not confined to the administrative record"; *Ellis v. Housenger*, No. C-13-1266-MMC, 2015 WL 3660079, at *3 (N.D. Cal. June 12, 2015) (noting *Karuk Tribes* "does not address in any manner the issue of whether evidence outside the administrative record can be considered," and rejecting defendant's argument that it silently overrules *Washington Toxics* and *Kraayenbrink*).

FWS fails to provide any case law overruling *Washington Toxics* and *Kraayenbrink*, and fails to meaningfully distinguish those cases to demonstrate they do not apply here. As noted, the citizen-suit provision allows citizens to enforce the ESA against federal agencies and any person in violation of its substantive provisions, a wholly different type of action than those posing a challenge to administrative decision-making. The court thus concludes that in actions arising under the citizen-suit provision of the ESA, federal agencies are not afforded the same deference enjoyed under the APA because such claims do not necessarily implicate decisions stemming from

the agency's expertise and experience. Accordingly, an order limiting review of NEA's claims arising under the citizen-suit provision of the ESA is DENIED.

*Conclusion*

For the reasons stated above, NEA's Motion to Complete and Supplement the U.S. Fish and Wildlife Service's Administrative Record (ECF No. 20) is DENIED, but with leave to refile if clear evidence surfaces which suggests supplementation is necessary to resolve dispositive motions. FWS's request to limit review of NEA's claims under the ESA to the administrative record is DENIED.

DATED this 20ᵗʰ day of December, 2019.

JOHN V. ACOSTA
United States Magistrate Judge